No. 33,250

FLORENCE M. CATHCART, *Appellee,* v. C. HOBSON DUNN, *Appellant.*

(69 P. 2d 698)

Opinion filed July 10, 1937.

*C. H. Brooks, Howard T. Fleeson, Fred W. Aley, Carl G. Tebbe, Wayne Coulson* and *Paul R. Kitch,* all of Wichita, for the appellant.

*Donald Muir,* of Anthony, *W. D. Jochems, J. Wirth Sargent, Emmet A. Blaes* and *Roetzel Jochems,* all of Wichita, for the appellee.

The opinion of the court was delivered by

HARVEY, J.: This was an action for damages for personal injuries sustained in an automobile casualty. The jury answered special questions and returned a verdict for plaintiff for $4,941.40, on which judgment was rendered. Defendant has appealed, and contends (1) defendant's negligence was not the proximate cause of plaintiff's injury, (2) the special findings are inconsistent with each other, and (3) the court erred in refusing to give a requested instruction. No question is raised as to the amount of the verdict if plaintiff is entitled to recover.

There was conflicting evidence as to how the casualty occurred. The evidence tending to support the verdict, which it is evident the

jury and trial court believed, may be summarized as follows: On the morning of September 2, 1934, plaintiff was riding in the front seat of a Chevrolet coach driven by her niece, Florence Thompson. Miss Thompson's father and his granddaughter, a little girl, were riding in the rear seat. They were traveling south from Wellington on U. S. highway 81, which carries heavy vehicular traffic. That morning defendant had five trucks transporting oil-well equipment and men along this highway from Kansas to Oklahoma. These trucks traveled several hundred feet apart. The two in front left Wellington ahead of Miss Thompson's car. She passed one of the trucks soon after leaving Wellington. The casualty occurred while she was attempting to pass the foremost truck and at a point in the highway two miles or more south of Wellington. This truck was a 1928 International semitrailer, on the trailer part of which had been built a house thirty feet or more long, seven feet eight inches wide, and nine feet high. The truck and trailer had a total length of about forty feet. The country thereabouts is rolling and the highway has ascending and descending grades. As the truck approached the top of one of these grades it was traveling twelve to fifteen miles an hour, partly to the left of the center of the highway. The Thompson car was behind it, traveling at about the same speed. On reaching the top of the grade there lay before them about 1,600 feet of a slope downward at a grade of about three and one half per cent. At the bottom of this the highway crossed two culverts, about forty feet apart, which had cement posts at the ends; then the highway ascended a grade to the crest of a hill some distance south. When they reached the crest of the first grade mentioned Miss Thompson honked the horn of her car, indicating she desired to pass the truck, and the driver of the truck, apparently hearing the horn, moved the truck over to the right-hand side of the pavement. Thereupon Miss Thompson pulled to the left side of the pavement, looked forward to see if any cars were approaching, and saw there was none as far as she could see to the crest of the hill beyond the draw, and accelerated the speed of her car. By that time the truck had started down the grade and increased its speed. As it did so the house on the trailer weaved somewhat. Miss Thompson drove along on the left side of the pavement, increasing the speed of her car, overtook and drove along the left side of the trailer until the front of her car was almost far enough forward to be even with the cab of the truck. While doing so she blew her horn repeatedly. The truck had

increased its speed to its maximum capacity of about thirty miles per hour. The Chevrolet was traveling between forty and forty-five miles an hour. They were about 100 feet from the culvert when the driver of the truck suddenly and without warning swerved the truck sharply to the left of the center of the pavement. Miss Thompson, fearful that she would be run into by the truck or crushed between it and the cement post of the culvert, swerved her car to the left, with the result that it went into a ditch at the side of the highway, with injuries resulting to plaintiff. The pavement was eighteen feet wide and had shoulders on each side seven feet wide, flush with the pavement. The pavement was dry, but the shoulder was wet; some witnesses said "muddy."

On behalf of defendant there was testimony to the effect that the truck never swerved to the left, that it was on the right-hand side of the pavement all the time, and that Miss Thompson, in attempting to drive by it, got the left wheels of her car off the pavement; that the front wheel caught on the edge of the pavement as she attempted to get back, and that in her efforts to handle her car it turned into the ditch. Some of the evidence on defendant's behalf was quite thoroughly discredited. The weight of the evidence was for the jury and the trial court. There was an abundance of substantial, competent evidence to support the verdict; indeed, there is no contention to the contrary.

Answering special questions, the jury found that defendant's truck swerved across the center line of the pavement toward the east while Florence Thompson was attempting to pass it, when the truck was about eighty feet north of the culvert; that in doing so it swerved one or two feet east of the center line of the pavement; that Florence Thompson could not have avoided the accident by slowing down or stopping; that she had driven along by the side of the truck 500 feet, attempting to pass it; that she was not guilty of any negligence which contributed proximately to cause the accident; that defendant's truck driver was guilty of negligence in being on the left-hand side of the pavement; that defendant's truck at the widest part was seven feet, eight inches; that when it started down the slope it was traveling at twelve to fifteen miles an hour; that half way down it was traveling at twenty to twenty-five miles an hour, and that when the Thompson car went into the ditch it was traveling about thirty miles per hour; that before reaching the crest of the hill it had been traveling to the left of the center line of the pave-

ment, and that both Miss Thompson and the plaintiff had observed the manner in which it was being driven.

Turning to the questions argued by appellant as to whether defendant's negligence was the proximate cause of the injury: On this point appellant argues that even though defendant's truck was swerved to the left of the center line of the pavement as much as one or two feet, Miss Thompson had plenty of room to drive by it, since the left side of the pavement was nine feet wide, with a seven-foot shoulder on the left. Naturally, Miss Thompson had no way of knowing how much farther to the left the truck would be driven. It was, of course, negligence to drive it to the left of the center of the pavement at all, particularly in view of the fact that a car was attempting to pass it, which Miss Thompson and plaintiff had every reason to believe the driver of the truck knew, and which he should not have done in any event without ascertaining whether a car was attempting to pass, a thing he made no effort to do. Under the evidence the question whether the truck being on the left-hand side of the pavement was the proximate cause of the injury was a question of fact. Certainly this court cannot say, as a matter of law, that it was not the proximate cause.

Appellant argues that the special questions are in conflict with each other, but in doing so quotes certain of the evidence. More accurately, the argument is that the answers to the special questions are not in strict accord with all the evidence. That could hardly be possible when so much of the evidence was in conflict. There is no serious contention that the findings are not supported by substantial evidence. The point that the findings themselves are in conflict is not well taken.

Appellant complains the court did not give the following requested instruction:

"I instruct you that the driver of the defendant's truck was under no duty while traveling on the public highway on the occasion in question to keep a lookout to his rear for approaching vehicles, and that he had a right to assume that drivers of vehicles approaching from the rear would give him some sort of signal of their intention to pass. In this connection, I instruct you that the defendant's driver was under no duty to turn to the right to allow the car driven by Florence Thompson to pass until he had notice of its approach from the rear and of the desire of its driver to pass. If you find that Florence Thompson failed to signal or that the defendant's driver did not hear her signal, if given, I instruct you that the defendant's driver was not negligent in failing to yield the road, if you so find the fact to be."

The requested instruction was inappropriate as to the facts, and for that reason should have been refused. The testimony of witnesses for plaintiff and defendant is that at the crest of the hill, before starting down the long slope, the truck was traveling partly on the left side of the pavement; that it pulled to the right and thereafter kept on its right side of the pavement until within about 100 feet of the culvert. So, for this distance of about a quarter of a mile there was no occasion for Miss Thompson to sound her horn to make the truck get over on its right side of the pavement. There is evidence she did sound her horn repeatedly to indicate to the driver of the truck that she was endeavoring to pass—not for the purpose of having him get over to the right-hand side of the pavement, where he already was. The driver's testimony was that he never saw her car at any time and did not know it was alongside of his truck. The statute (G. S. 1935, 68-152e) required the truck to be equipped "with a mirror so located as to reflect to the operator a view of the highway for at least two hundred feet to the rear." An instruction that "the driver of the . . . truck was under no duty . . . to keep a lookout to his rear for approaching vehicles" would have been in violation of the purpose of this statute. The evidence does not disclose whether the truck in question was so equipped. Obviously, the purpose of the statute is to have the truck so equipped that the driver can see cars which endeavor to pass. If the truck was so equipped, the driver paid no attention to it, neither did he even look to see whether there was a car beside his truck and attempting to pass. In such a situation defendant could not avoid liability by the simple declaration of the driver of the truck that he did not hear the horn and that he did not know the car was beside him. Cases cited by appellant under this head are not in point. It is not necessary to analyze them and point out the distinctions.

We find no error in the record. The judgment of the court below is affirmed.